UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 1, 2017

LETTER TO COUNSEL

RE: *Essie Lee Peake v. Commissioner, Social Security Administration*;
Civil No. SAG-16-4099

Dear Counsel:

On December 27, 2016, Plaintiff Essie Lee Peake petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits. [ECF No. 1]. I have considered the parties' cross-motions for summary judgment. [ECF Nos. 15, 17]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Ms. Peake filed a claim for Disability Insurance Benefits ("DIB") on July 11, 2012. (Tr. 155-59). She alleged a disability onset date of May 8, 2012. *Id.* Her claim was denied initially and on reconsideration. (Tr. 93-96, 98-99). A hearing was held on June 24, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 45-72). Following the hearing, the ALJ determined that Ms. Peake was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 18-44). The Appeals Council denied Ms. Peake's request for review, (Tr. 1-7), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Peake suffered from the severe impairments of left wrist fracture, hypertension, and varicose veins. (Tr. 24). Despite these impairments, the ALJ determined that Ms. Peake retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) except she can perform frequent handling and fingering with the non-dominant left upper extremity. The claimant should avoid industrial hazards, including heights and dangerous machinery. She can never climb ladders, ropes, or scaffolds.

(Tr. 26). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Peake could perform jobs existing in significant numbers in the national economy and therefore was not disabled. (Tr. 37-39).

Ms. Peake raises two primary arguments on appeal: (1) that the ALJ failed to find her alleged depression to be a severe impairment or to include depression-related limitations in the RFC assessment; and (2) that the ALJ assigned inadequate weight to the medical opinions of the treating physician, Dr. Burroughs. [ECF 15-1, pp. 5-10]. Each argument lacks merit and is addressed below.

First, Ms. Peake contends that the ALJ erred by not determining that her depression constitutes a severe impairment. *Id.* at pp. 5-9. An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a). The claimant bears the burden of proving that her impairment is severe. *See Johnson v. Astrue*, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Here, the ALJ thoroughly considered Ms. Peake's depression at Step Two. (Tr. 24). Most significantly, the ALJ noted that Ms. Peake's "mental status examinations showed only minimal or no abnormalities," and that her "treatment notes [did] not demonstrate any significant limitation in functioning" due to her depression. *Id.* The ALJ also noted that Ms. Peake's "condition remained relatively stable over time." *Id.* Moreover, the ALJ cited the State psychological consultant's determination that Ms. Peake "had only 'mild' restriction of activities of daily living, 'mild' difficulties in maintaining social functioning, and 'mild' difficulties in maintaining concentration, persistence, or pace[.]" (Tr. 24-25). Accordingly, the ALJ fairly concluded that Ms. Peake's depression had no more than a minimal effect on her ability to work. *Id.* Moreover, even if the ALJ had erred in his evaluation of Ms. Peake's depression at Step Two, such error would be harmless. Because Ms. Peake made the threshold showing that her left wrist fracture, hypertension, and varicose veins constituted severe impairments, the ALJ continued with the sequential evaluation process and properly considered all of the impairments, both severe and non-severe, that significantly impacted Ms. Peake's ability to work. *See* 20 C.F.R. § 404.1523. Any Step Two error, then, does not necessitate remand.

In addition, the ALJ's RFC analysis sufficiently explains why there are no depression-related limitations in the RFC assessment. The ALJ explained: "Though the claimant has received psychiatric treatment, her mental status remained stable with medications and therapy, and she maintained her usual activities of daily living without particular assistance." (Tr. 34). Moreover, the ALJ addressed Ms. Peake's GAF scores and contrasted them with "fairly benign mental status examinations and conservative treatment." (Tr. 36). In light of the analysis provided by the ALJ citing substantial evidence, the RFC assessment is adequate.

Second, Ms. Peake contends that the ALJ failed to give proper weight to the opinions of her treating physician, Dr. Burroughs. [ECF 15-1, pp. 9-10]. A treating physician's opinion is given controlling weight when two conditions are met: (1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and (2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d 585 (4th Cir. 1996); *see also* 20 C.F.R. § 404.1527(d)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as the length and nature of the treatment relationship, the degree to which the opinion is supported by the

record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6). The Commissioner must also consider, and is entitled to rely on, opinions from non-treating doctors. *See* SSR 96-6p, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Contrary to Ms. Peake's argument, the ALJ properly evaluated Dr. Burroughs's opinions. Dr. Burroughs opined that Ms. Peake had "symptoms consistent with a Major Depressive Disorder" and "experience[d] decreased energy, insomnia, decreased motivation, anxiety, guilt, and occasional hallucinatory experiences." (Tr. 362). In addition, Dr. Burroughs opined that Ms. Peake "had 'extreme' difficulty in carrying out detailed instructions and maintaining attention and concentration for extended periods; working in proximity to others; completing a normal workweek; and performing at a consistent pace." (Tr. 35); *see* (Tr. 360). Moreover, Dr. Burroughs opined that Ms. Peake had "'moderate' difficulties in carrying out even short and simple instructions, sustaining a routine, making simple work-related decisions, completing a normal workday, responding appropriately to changes in work setting, setting goals independently, and in social functioning generally." (Tr. 35, 360-61). Furthermore, Dr. Burroughs opined that Ms. Peake "was disabled from December 13, 2013, through December 13, 2015." (Tr. 35).

The ALJ assigned Dr. Burroughs's opinions "little" and "no" weight because they were inconsistent with the medical evidence. *Id.* (assigning "little" weight to Dr. Burroughs's Mental Capacity Assessment, and "no weight" to Dr. Burroughs's Medical Report Form). As an initial matter, Dr. Burroughs issued these opinions only fifteen days after she began treating Ms. Peake. (Tr. 360-62, 371-72). As a result, her treatment relationship supports an assignment of lesser weight, since she lacks the type of longitudinal relationship warranting greater deference. *Lang v. Astrue*, Civ. No. TJS-11-1909, 2013 WL 425064, at *3 (D. Md. Feb. 1, 2013) (characterizing a five-month treating relationship as "short-term" and "far from substantial"). Additionally, Dr. Burroughs's Mental Capacity Assessment and Medical Report Form consist of brief "checkbox form opinion[s]" that provide limited opportunity for narrative assessment or citation to the medical record. (Tr. 35); *see Brown ex rel. A.W. v. Comm'r of Soc. Sec.*, No. CIV. SAG-12-52, 2013 WL 823371, at *2 (D. Md. Mar. 5, 2013) (noting that "it would be difficult for an ALJ to assign any meaningful weight to opinions devoid of evidentiary support"); *see also Beitzell v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-12-2669, 2013 WL 3155443, at *3 (D. Md. June 18, 2013) (upholding the ALJ's assignment of weight and noting that the treating physician's assessment "provided no narrative explanation for the limitations proposed in the form"). Regardless, the ALJ noted that Dr. Burroughs's Mental Capacity Assessment was "inconsistent with [Ms. Peake's] mental status examinations showing either no or only mild abnormalities, including normal concentration and memory, good eye contact, and cooperative attitude." (Tr. 35). Moreover, the ALJ noted that Ms. Peake's admitted daily activities were in "stark contrast to the extensive limitations assessed by Dr. Burroughs." *Id.* (noting Ms. Peake's admission that "she had friends and left the house regularly for household needs"). Furthermore, regarding Dr. Burroughs's Medical Report Form, the ALJ assigned "no weight" to Dr. Burroughs's conclusion that Ms. Peake was disabled, noting that her determination "express[es] an opinion on the

ultimate issue of disability, which is an administrative finding reserved to the [ALJ]." *Id.* These inconsistencies, in addition to others cited by the ALJ, provide sufficient justification for the ALJ's decision to accord "little" and "no" weight to Dr. Burroughs's opinions.

Ms. Peake also argues that the ALJ failed to consider the factors outlined in 20 C.F.R. §§ 404.1527(c)(1)-(6) when assigning weight to Dr. Burroughs's opinions. The regulations require an ALJ to assess several factors when determining what weight to assign to the medical opinions presented. 20 C.F.R. § 404.1527(c). These factors include: the examining relationship between the physician and the claimant; the treatment relationship between the physician and the claimant; the specialization of the physician; the consistency of a medical opinion with the record as a whole; and the extent to which a medical opinion is supported by evidence. 20 C.F.R. §§ 404.1527(c)(1)-(5). Upon review of the record, I find that the ALJ properly considered the factors required under the regulations. Specifically, the ALJ cited Dr. Burroughs's medical records, which denote her status as Ms. Peake's treating physician, and indicate that she has treated Ms. Peake since February 4, 2014. (Tr. 35); *see* (Tr. 362, 371). The ALJ then found that Dr. Burroughs's opinions were inconsistent with the medical evidence. (Tr. 35). Considering the entirety of the ALJ's analysis, I find that the ALJ properly applied the regulations in assigning weight to Dr. Burroughs's opinions, and that his findings are supported by substantial evidence.

For the reasons set forth herein, Ms. Peake's Motion for Summary Judgment (ECF No. 15) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge